FILED
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2010 OCT 29  PM 12: 10

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

----------------------------------------------------------------- x

MKUBWA MATTHEWS AND ZAMBENA ALLAN

Plaintiffs,

**10 CIV.**

-against-

THE CITY OF NEW YORK, POLICE OFFICER
MATTHEW T. GRANAHAN, shield no. 26635,
SERGEANT LOUIS MARINO, shield no. 1597, POLICE
OFFICER KENNETH MILLER, shield no. 18242,
POLICE OFFICER VITALI, and POLICE OFFICERS
JOHN DOE AND RICHARD ROE (names and number of
whom are unknown at present, and other unidentified
members of the New York City Police Department),

Defendants.

----------------------------------------------------------------- x

**COMPLAINT**

**CV 10 - 4991**

**JURY TRIAL DEMANDED**

**ECF CASE**

**MATSUMOTO, J.**

**LEVY, M.J.**

## PRELIMINARY STATEMENT

1.     This is a civil rights action to recover money damages arising out of
defendants' violation of plaintiffs' rights as secured by the Civil Rights Act, 42 U.S.C. Section
1983, and of rights secured by the First, Fourth and Fourteenth Amendments to the United States
Constitution, and the laws of the State of New York.   Plaintiffs, while attempting to lawfully
travel to the hospital to seek medical treatment for plaintiff Zambena Allan, a crime victim who
had just been assaulted and mugged, were stopped without reasonable suspicion, searched
without probable cause, arrested without probable cause, and prevented from seeking medical
treatment at the hospital.   Further, defendants failed to provide plaintiff Zambena Allan with
medical attention, and maliciously prosecuted plaintiff Mkubwa Matthews in violation of the
Fourth and Fourteenth Amendments to the United States Constitution.   Plaintiffs were deprived

of their constitutional and common law rights when the individual defendants unlawfully confined plaintiffs, caused the unjustifiable arrest of plaintiffs, caused the unlawful prosecution of plaintiff Mkubwa Matthews, and failed to provide medical attention for plaintiff Zambena Allan.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution.   Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1342 (3) and (4) and the aforementioned statutory and constitutional provisions.

3.     The plaintiffs Mkubwa Matthews and Zambena Allan further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gave rise to the federally based claims and causes of action.

## VENUE

4.     Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because the claims arose in this district.

## PARTIES

5.     Plaintiff Mkubwa Matthews is a citizen of the United States and a resident of the County of Kings, State of New York.

6.     Plaintiff Zambena Allan is a citizen of the United States and a resident of the County of Kings, State of New York.

- 2 -

7.     New York City Police Officer Matthew T. Granahan, shield number 26635, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

8.     On the date of incident, December 20, 2007, Police Officer Matthew T. Granahan was assigned to the 77th Precinct Anti-crime Unit.

9.     Police Officer Matthew T. Granahan is being sued in his individual and official capacity.

10.    New York City Police Officer Kenneth Miller, shield number 18242, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

11.    On the date of incident, December 20, 2007, Police Officer Kenneth Miller was assigned to the 77th Precinct Anti-crime Unit.

12.    Police Officer Kenneth Miller is being sued herein in his individual and official capacity.

13.    New York City Police Sergeant Louis Marino, shield number 1597, is and was at all times relevant herein a sergeant, officer, employee, and agent of the New York City Police Department.

14.    On the date of incident, December 20, 2007, Sergeant Louis Marino was assigned to the 77th Precinct Anti-crime Unit.

15.    Sergeant Louis Marino is being sued in his individual and official capacity.

16.    New York City Police Officer Vitali is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

- 3 -

17.   On the date of incident, December 20, 2007, Police Officer Vitali was assigned to the 77th Precinct Anti-crime Unit.

18.   Police Officer Vitali is being sued in his individual and official capacity.

19.   New York City Police Officers John Doe and Richard Roe are and were at all times relevant herein officers, employees, and agents of the New York City Police Department.

20.   On the date of the incident, Officers John Doe and Richard Roe were assigned to the 77th Precinct.

21.   Officers John Doe and Richard Roe are being sued in their individual capacity and official capacity.

22.   At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the New York City Police Department at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the New York City Police Department and incidental to the lawful pursuit of their duties as officers, employees and agents of the New York City Police Department.

23.   Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The defendant City of New York assumes the risks incidental to the maintenance of a police

- 4 -

force and the employment of police officers as said risks attach to the public consumers of the services provided by the New York City Police Department.

## **STATEMENT OF FACTS**

24.    On December 20, 2007 plaintiff Mkubwa Matthews was thirty-one (31) years old, and had never been arrested prior to the date of incident.

25.    On December 20, 2007 plaintiff Mkubwa Matthews lived in Crown Heights, Brooklyn for approximately twenty-three (23) years.

26.    Plaintiff Mkubwa Matthews graduated Prospect Heights High School with honors.

27.    Plaintiff Mkubwa Matthews was a Merchant Marine.

28.    Additionally, plaintiff Mkubwa Matthews works full time as a certified caretaker for an autistic individual.

29.    On December 20, 2007, at approximately 1:00 a.m., plaintiff Mkubwa Matthews and his younger brother plaintiff Zambena Allan attended their friend's birthday party at Secrets Restaurant Bar & Lounge located at 724 Nostrand Avenue in Kings County, State of New York.

30.    Before entering Secrets Restaurant Bar & Lounge, each of the patrons were frisked for weapons. Patrons were not permitted to enter Secrets Restaurant Bar & Lounge with contraband or weapons.

31.    After spending a couple of hours at Secrets Restaurant Bar & Lounge, plaintiff Zambena Allan was suddenly robbed and seriously assaulted by unknown patrons of Secrets Restaurant Bar & Lounge who were unaffiliated with the birthday party that plaintiffs were attending.

32.     The unknown individuals, approximately fifteen (15) men, attacked plaintiff Zambena Allan, and attempted to grab plaintiff Allan's gold chain from around his neck.

33.     Thereafter, the approximately fifteen (15) unknown individuals repeatedly kicked, stomped, and punched plaintiff Zambena Allan until he was unconscious.

34.     Plaintiff Zambena Allan was beaten so badly that when he was unconscious he lost control of his bowels and defecated himself.

35.     Plaintiff Zambena Allen's eyes were swollen almost shut, his head was injured, his nose and lip were bleeding, he had cuts on his chest, kick marks on his shirt, and his shirt was ripped.

36.     All individuals who approached plaintiff Zambena Allan thereafter on that night, including defendants, were aware that plaintiff Zambena Allan was a crime victim who was severely beaten by the perpetrators.

37.     Additionally, all individuals who approached plaintiff Zambena Allan thereafter on that night, including defendants, were aware that plaintiff Zambena Allan defecated himself based upon the noxious odor emanating from his body and pants and his physical condition as a result of the assault.

38.     Plaintiff Mkubwa Matthews and the other individuals attending the birthday party could not see plaintiff Zambena Allan being robbed and assaulted because the robbery and assault occurred in a different area of the establishment from where the birthday party was located.

- 6 -

39.     However, after plaintiff Zambena Allan had already been robbed and assaulted, Plaintiff Mkubwa Matthews was advised that his brother, plaintiff Zambena Allan, was the victim of a crime and he had been beaten and robbed.

40.     Upon learning that his brother was a crime victim and was seriously injured, plaintiff Mkubwa Matthews came to plaintiff Zambena Allan's assistance and asked him if he was okay.

41.     Plaintiff Allan could not talk, appeared dazed and was coming in and out of consciousness.

42.     Three friends from the birthday party, two females and a male, offered to get their car and drive plaintiffs Allan and Matthews to King's County Hospital which was located a short distance away.

43.     The friends drove the car to the front of Secrets Restaurant Bar & Lounge and one of the friends helped plaintiff Matthews assist his brother plaintiff Allan to the car because plaintiff Allan was badly beaten and had trouble walking without assistance.

44.     Upon information and belief, after the individuals who robbed and beat plaintiff Allan left Secrets Restaurant Bar & Lounge, they stood outside the establishment and fired gunshots into the air.

45.     Upon information and belief, calls were made to 911 advising the 911 dispatcher that an individual was assaulted inside of the Secrets Restaurant Bar & Lounge and that the perpetrators were outside of the club firing gunshots.

46.     The individually named defendant police officers and sergeants responded to the 911 calls and drove to Secrets Restaurant Bar & Lounge in an unmarked vehicle.

47.     Each of the individually named defendant police officers and sergeants has a different version of events regarding what occurred after they arrived at Secrets Restaurant Bar & Lounge.

48.     The individually named defendant police officers and sergeants did observe that plaintiff Allan was badly injured, defecated himself, and was a victim of a robbery and assault.

49.     Furthermore, the individually named defendant police officers and sergeants observed plaintiff Matthews escort his brother to the vehicle that was waiting for them in front of Secrets Restaurant Bar & Lounge.

50.     The individually named defendant police officers and sergeants did not observe plaintiffs threaten anyone in or outside of Secrets Restaurant Bar & Lounge.

51.     The individually named defendant police officers and sergeants did not see a bulge that could have been a weapon in the waistband of plaintiff Matthews pants, as the style of pants plaintiff Matthews was wearing on the night of the incident were tightly fit and could not have concealed a weapon in the waistband.

52.     The individually named defendant police officers and sergeants did not hear plaintiffs say anything that gave them reasonable suspicion to believe plaintiffs were carrying a weapon.

53.     Since the individually named defendant police officers lacked reasonable suspicion and/or probable cause to stop plaintiffs, they allowed plaintiff Matthews, his brother plaintiff Allan, and their three friends to drive away from the front of Secrets Restaurant Bar & Lounge.

54.     Plaintiffs' friends drove the vehicle towards Kings County Hospital in order to get plaintiff Allan treated for his injuries.

55.     However, the vehicle was pulled over by the individually named defendant police officers and sergeants before plaintiffs arrived at Kings County Hospital.

56.     The vehicle occupied by plaintiffs was stopped by the individually named defendant police officers and sergeants despite the fact that the officers lacked reasonable suspicion and/or probable cause to stop the vehicle.

57.     One of the individually named defendant police officers or sergeants approached the driver of the vehicle and asked for her license and registration.

58.     The driver asked the police officer why she was stopped.

59.     The police officer refused to provide an explanation for why he stopped the vehicle and ordered the driver to provide him with her driver's license and registration.

60.     The driver complied with the officers' request and gave him her license and registration.

61.     Thereafter, without explanation the defendant police officers ordered all of the occupants of the vehicle, including plaintiffs, to exit the vehicle.

62.     The occupants of the vehicle complied with the orders from the individually named defendant police officers and sergeants.

63.     The individually named defendant police officers and sergeants asked plaintiff Mkubwa Matthews where they were going.

64.     Plaintiff Mkubwa Matthews explained that they were taking plaintiff Zambena Allan to hospital, as he was a crime victim, who had just been severely assaulted and injured.

- 9 -

65.     The individually named defendant police officers and sergeants observed plaintiff Allan's severe injuries and smelled the noxious odor that resulted from him defecating himself and knew that he required medical assistance.

66.     Nevertheless, the individually named defendant police officers proceeded to detain plaintiffs and their friends, prevent them from going to King's County Hospital, and searched the vehicle without probable cause and/or the consent of any of the occupants.

67.     During the search of the vehicle, the individually named defendant police officers and sergeants found a gun, inside of the jacket pocket of one of the friends of plaintiffs.

68.     The individually named defendant police officers and sergeants knew that the jacket containing the gun belonged to plaintiffs' friend and knew that the jacket and the gun did not belong to plaintiffs.

69.     Nevertheless, without probable cause, the individually named defendant police officers and sergeants placed all five occupants of the vehicle, including plaintiffs, in handcuffs and placed them under arrest.

70.     The occupants of the vehicle were each handcuffed and taken to the 77th Precinct by the individually named defendant police officers and sergeants.

71.     The individually named defendant police officers and sergeants told plaintiff Matthews and the other occupants of the vehicle that plaintiff Allan would not receive medical attention and would not be released from the 77th Precinct until someone signed a written confession admitting to possession of the gun.

72.     The individual who the individually named police officers already knew possessed the gun in his coat pocket refused to confess to possessing the gun.

- 10 -

73.   Since the individually named police officer and sergeant defendants wanted a written confession from one of the occupants of the vehicle, they attempted to coerce plaintiff Matthews to confess that the gun was his.

74.   Although the individually named police officer and sergeant defendants knew that the gun belonged to plaintiffs' friend, they also knew that they could coerce plaintiff Matthews to sign a written confession by withholding medical treatment to his brother, plaintiff Allan until plaintiff Matthews signed a written confession.

75.   Plaintiff Mkubwa Matthews advised the individually named defendant police officers and sergeants that he did not know whose gun it was, and stated that the gun was not his.

76.   Plaintiff Mkubwa Matthews asked the individually named police officers and sergeants if they would release his brother, plaintiff Zambena Allan so that he could go to the hospital and get medical attention.

77.   The individually named defendant police officers and sergeants denied plaintiff Mkubwa Matthews' request to release plaintiff Allan and stated that unless someone admitted to possession of the gun, everyone, including plaintiff Allan, was going to remain arrested.

78.   Although the individually named defendant police officers and sergeants knew that the gun did not belong to plaintiff Mkubwa Matthews, they intentionally and illegally coerced plaintiff Matthews into signing a written confession stating that the gun was his by telling him that his brother, plaintiff Zambena Allan, would be denied medical care until plaintiff Matthews signed a written confession.

- 11 -

79.     Approximately thirty (30) minutes after plaintiff Mkubwa Matthews was coerced into signing a false statement, plaintiff Zambena Allan and the three (3) additional passengers in the vehicle were released from police custody.

80.     Plaintiff Zambena Allan's arrest was voided by defendants and he was released from the 77th Precinct at approximately 9:25 a.m. on December 20, 2010.

81.     After his release from custody, plaintiff Zambena Allan sought medical treatment at Kings County Hospital and was diagnosed, amongst other ailments, with a detached retina from being punched in the head.

82.     The individually named defendant police officers and sergeants charged plaintiff Mkubwa Matthews with Criminal Possession of a Weapon in the second and third degrees and initiated a prosecution against him.

83.     Plaintiff Mkubwa Matthews was taken to Brooklyn Central Booking at approximately 8:55 p.m. on December 20, 2007.

84.     The individually named defendant police officers and sergeants provided false information to the Assistant District Attorney and the Grand Jury to explain why they stopped the vehicle occupied by plaintiffs, why the vehicle was searched, and why they believed the gun found in the vehicle belonged to plaintiff Mkubwa Matthews.

85.     The officers created false versions of events to justify the search of the vehicle and so that the gun would not be suppressed during the criminal prosecution of plaintiff Mkubwa Matthews.

86.     Plaintiff Mkubwa Matthews was indicted by a grand jury based upon the fabricated testimony of the individually named defendant police officers and sergeants.

- 12 -

87.     The presumption of probable cause created by the Grand Jury indictment is rebuttable in this case because the indictment was based upon false statements told to the grand jury by the individually named police officer defendants and sergeants.

88.     On May 18, 2010 and May 20, 2010 a Mapp, Dunnaway, and Huntley hearing was held, wherein defendants Granahan, Miller and Marino testified falsely about why they stopped, seized, and searched the vehicle occupied by plaintiffs on the night of the underlying incident.

89.     Thereafter, based upon the lies and inconsistent statements made by the officers on July 27, 2010 all charges against plaintiff Mkubwa Matthews were dismissed.

90.     Plaintiff Mkubwa Matthews made approximately nine (9) Court appearances before his case was dismissed.

91.     Defendants brutally handcuffed plaintiffs causing them pain and numbness to their wrists.

92.     Plaintiffs asked the officers to loosen their handcuffs, but they refused.

93.     The individually named defendant police officers and sergeants observed the other defendants violate plaintiffs' rights under the Constitution of the United States and did nothing to prevent the violation of their Constitutional Rights.

94.     Throughout the entire ordeal, plaintiffs complied with the orders of the defendants.

95.     Plaintiffs did not resist arrest.

96.     Despite plaintiff Allan's requests for medical attention, defendants refused to provide him with appropriate medical care.

- 13 -

97. As a result of defendants' actions plaintiffs sustained numbness in both of their hands.

98. The assault, battery, excessive force, malicious prosecution, false arrest, false imprisonment, failure to intervene, and failure to provide medical attention to plaintiffs by the individually named defendant police officers and sergeants caused plaintiffs to sustain physical pain and suffering, as well as psychological and emotional trauma.

99. Defendant Sergeant Louis Marino has a history of police misconduct, including conduct involving substantiated allegations of dishonesty.

100. Defendant City of New York and its policy makers were aware of Sergeant Louis Marino's prior misconduct. Nevertheless, with deliberate indifference to defendant Marino's prior misconduct, Louis Marino was promoted to Sergeant by defendant City of New York and the New York City Police Department and given the responsibility of supervising police officers to ensure that they are following police procedure, the laws of the State of New York and the Constitution of the United States of America.

101. Defendant Sergeant Louis Marino was previously suspended by defendant City of New York and the New York Police Department for thirty (30) days and placed on modified duty for three years because he did not report and was untruthful about an incident where a friend of his, who also happened to be a police officer, shot an individual.

102. Defendant City of New York and the New York City Police Department's deliberate indifference to the defendant police officers' dishonesty and prior allegations of misconduct caused plaintiffs' Constitutional Rights to be violated on December 20, 2010 and thereafter.

- 14 -

103.    There is a policy, practice or custom within the New York City Police Department wherein New York City Police Officers search vehicles and apartments without probable cause, arrest all occupants of the vehicle or apartment regardless of whether the police have reason to believe weapons or contraband belong to a particular individual, and create false versions of events to justify their actions.

104.    Defendant City of New York and the New York City Police Department are deliberately indifferent to the fact that New York City Police Officers search vehicles and apartments without probable cause, arrest all occupants of the vehicle or apartment regardless of whether the police have reason to believe weapons or contraband belong to a particular individual, and create false versions of events to justify their actions.

105.    As a result of the aforementioned policies and practices and defendant City of New York's deliberate indifference about the fact that New York City Police Officers search vehicles and apartments without probable cause, arrest all occupants of the vehicle or apartment regardless of whether the police have reason to believe weapons or contraband belong to a particular individual, and create false versions of events to justify their actions, there is a pattern, policy, custom or practice of New York City Police Officers arresting individuals for possession of weapons or contraband without probable cause.

106.    The aforementioned, unconstitutional policies, practices, and customs of defendant City of New York and the New York City Police Department caused plaintiffs' Constitutional rights to be violated on December 20, 2007.

- 15 -

## FIRST CAUSE OF ACTION

## Violation of Plaintiffs' Fourth Amendment and

## Fourteenth Amendment Rights

107.    The plaintiffs repeats, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 106 with the same force and effect as if more fully set forth at length herein.

108.    Defendants Police Officers Granahan, Miller, and Vitali and John Doe and Richard Roe, and Sergeant Marino who were acting in concert and within the scope of their authority, denied plaintiff Zambena Allan medical timely treatment, and arrested and caused plaintiffs Zambena Allan and Mkubwa Matthews to be imprisoned and criminally prosecuted without probable cause in violation of plaintiffs' right to be free of an unreasonable seizure under the Fourth Amendment of the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

## Violation of Plaintiffs' Fourth Amendment Rights

109.    The plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 108 with the same force and effect as if more fully set forth at length herein.

110.    The use of excessive force by defendants Police Officers Granahan, Miller, and Vitali and John Doe and Richard Roe, and Sergeant Marino, acting in concert, in tightly handcuffing plaintiffs was an objectively unreasonable physical seizure of plaintiffs in violation of their rights under the Fourth Amendment to the United States Constitution.

- 16 -

## THIRD CAUSE OF ACTION

### False Arrest and False Imprisonment

111.    The plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 110 with the same force and effect as if more fully set forth at length herein.

112.    The acts and conduct of the defendants constitute false arrest and false imprisonment under the laws of the State of New York and under the Fourth Amendment to the United States Constitution.  Defendants intended to confine plaintiffs and, in fact, confined plaintiffs, and plaintiffs were conscious of the confinement.  In addition, plaintiffs did not consent to the confinement and the confinement was not otherwise privileged.

113.    Defendants Police Officers Granahan, Miller, and Vitali and John Doe and Richard Roe, and Sergeant Marino were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

114.    The City, as the employer of the police officer defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

115.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## **FOURTH CAUSE OF ACTION**

### **Malicious Prosecution**

116.    The plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 115 with the same force and effect as if more fully set forth at length herein.

117.    The acts and conduct of the defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the United States Constitution.

118.    Defendants commenced and continued a criminal proceeding against plaintiff Mkubwa Matthews.

119.    There was actual malice and an absence of probable cause for the criminal proceeding against plaintiff Mkubwa Matthews and for each of the charges for which he was prosecuted.

120.    The prosecution and criminal proceedings terminated favorably to plaintiff Mkubwa Matthews.

121.    Plaintiff Mkubwa Matthews was subjected to a post-arraignment deprivation of liberty sufficient to implicate plaintiff's Fourth Amendment rights.

122.    Defendants Police Officers Granahan, Miller, and Vitali and John Doe and Richard Roe, and Sergeant Marino were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

123.    The City, as the employer of the police officer defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

124.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## FIFTH CAUSE OF ACTION

### Failure to Intervene

125.     The plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 124 with the same force and effect as if more fully set forth at length herein.

126.     Defendants had an affirmative duty to intervene on behalf of plaintiffs, whose constitutional rights were being violated in the presence of other officers.

127.     Defendants failed to intervene to prevent the unlawful conduct described herein.

128.     As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, they were put in fear of their safety, and they were humiliated and subject to excessive force, false arrest, malicious prosecution, and other physical constraints.

129.     Defendants Police Officers Granahan, Miller, and Vitali and John Doe and Richard Roe, and Sergeant Marino were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

130.     The City, as the employer of the police officer defendants, is responsible for their wrongdoing under the doctrine of respondeat superior

131.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## SIXTH CAUSE OF ACTION

### Deliberate Indifference to Medical Needs

132.    The plaintiffs repeats reiterate and reallege each and every allegation contained in paragraphs marked 1 through 131 with the same force and effect as if more fully set forth at length herein.

133.    Defendants, despite being aware that plaintiff Zambena Allan was seriously injured when defendants detained him, refused to administer and properly procure, immediate and adequate medical attention.

134.    Defendants Police Officers Granahan, Miller, and Vitali and John Doe and Richard Roe, and Sergeant Marino were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

135.    The City, as the employer of the police officer defendants, is responsible for their wrongdoing under the doctrine of respondeat superior

136.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## SEVENTH CAUSE OF ACTION

## Municipal Liability under 42 U.S.C. § 1983

137.  The plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked 1 through 136 with the same force and effect as if more fully set forth at length herein.

138.  Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of defendant City of New York, which is forbidden by the Constitution of the United States.

139.  The aforementioned customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department included, but were not limited to policies, customs and practices wherein New York City Police Officers search vehicles and apartments without probable cause, arrest all occupants of the vehicle or apartment regardless of whether the police have reason to believe weapons or contraband belong to a particular individual, and create false versions of events to justify their actions, as well as inadequate screening, hiring, retaining, training, and supervising its employees with respect to this issue.

140.  The aforementioned customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department were the moving force behind the violation of plaintiffs' constitutional rights as describer herein.  As a result of the failure of defendant City of New York and the New York City Police Department to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant City of New York has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

- 21 -

141.     The foregoing customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department were the moving force behind the Constitutional violations suffered by plaintiffs as alleged herein.

142.     The foregoing customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiffs as alleged herein.

143.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiffs were unlawfully arrested and prosecuted.

144.     Defendants collectively and individually, while acting under color of state law were directly and actively involved in violating plaintiffs' constitutional rights.

## JURY DEMAND

145.     Plaintiffs hereby demand trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

That the jury find and the Court adjudge and decree that plaintiffs Mkubwa Matthews and Zambena Allan shall recover compensatory damages in the sum of $2,000,000 against the individual defendants and the City of New York, jointly and severally, together with interest and costs; and punitive damages in the sum of $1,000,000 against the individual defendants, jointly and severally.

a.     That the plaintiffs recover the cost of the suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988.

b.    That the plaintiffs have such other and further relief as the Court shall deem just and proper.

Dated:    New York, New York
             October 29, 2010

By:    _____

        DAVID M. HAZAN
        STUART E. JACOBS
        JACOBS & HAZAN, LLP
        Attorneys for Plaintiffs
        22 Cortlandt Street, 16th Floor
        New York, NY 10007
        (212) 419-0363