UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
MKUBWA MATTHEWS and ZAMBENA
ALLAN,

        Plaintiffs,

     -against-

THE CITY OF NEW YORK; POLICE
OFFICER MATTHEW T. GRANAHAN,
Shield No. 26635; SERGEANT LOUIS
MARINO, Shield No. 1597; POLICE
OFFICER KENNETH MILLER, Shield No.
18242; POLICE OFFICER VITALI; and
POLICE OFFICERS JOHN DOE and
RICHARD ROE (names and shield
numbers of whom are unknown at
present, and other unidentified
members of the New York City
Police Department),

        Defendants.
--------------------------------X

**MEMORANDUM AND ORDER**

10-CV-4991

**MATSUMOTO, United States District Judge:**

      On October 29, 2010, pursuant to 42 U.S.C. § 1983

("Section 1983") and New York law, Mkubwa Matthews and Zambena

Allan ("plaintiffs") filed this action against the City of New

York ("the City") and individual defendants Sergeant Louis

Marino, Police Officers Matthew Granahan, Kenneth Miller, and

Vitali, and two unidentified members of the New York City Police

Department ("NYPD"), John Doe and Richard Roe (the "Individual

Defendants," together with the City, the "defendants").

Plaintiffs assert constitutional claims pursuant to Section 1983

against the Individual Defendants for unreasonable search and

seizure, false arrest and imprisonment, malicious prosecution, excessive force, and failure to intervene, a *Monell* claim against the City for the same constitutional violations, and analogous claims under New York law. Presently before the court is defendants' Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. Having reviewed the parties' submissions and the relevant case law, for the reasons discussed below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from plaintiffs' complaint (*see* ECF No. 1, Complaint ("Compl.")) and are accepted as true for the purposes of this motion, drawing all inferences in favor of the nonmoving plaintiffs. *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

I. **Statement of Facts**

A. **The Assault of Plaintiff Allan**

On December 20, 2007, Matthews and his younger brother Allan attended a birthday party at Secrets Restaurant Bar & Lounge ("Secrets") in Kings County, New York. (Compl. ¶ 29.) Before entering Secrets at approximately 1:00 AM, both plaintiffs were frisked for weapons. (*Id.* ¶¶ 29-30.) A few hours later, approximately fifteen unknown male patrons at Secrets robbed and attacked Allan, attempting to steal a gold chain worn around his neck. (*Id.* ¶¶ 31-32.) The assailants

2

brutally assaulted Allan, repeatedly kicking, stomping, and punching him. (*Id.* ¶¶ 31, 33.) As a result of being badly beaten, Allan lost consciousness and defecated on himself, his eyes were swollen almost shut, his head was injured, and his nose and lips were bleeding. (*Id.* ¶¶ 34-35.) Additionally, Allan had cuts on his chest and his shirt was ripped and had kick marks on it. (*Id.* ¶ 35.)

During the assault, Matthews did not know that Allan was being attacked because the beating occurred in a different area of Secrets from where the birthday party was held. (*Id.* ¶ 38.) After learning of the assault, Matthews came to Allan's assistance and asked whether he was okay. (*Id.* ¶ 40.) Appearing dazed, Allan was unable to speak and was slipping in and out of consciousness. (*Id.* ¶ 41.)

Three friends from the birthday party offered to drive plaintiffs a short distance to Kings County Hospital (the "Hospital") in their vehicle, which the friends then drove to the entrance of Secrets to pick up the plaintiffs. (*Id.* ¶¶ 42-43.) Matthews and one of the friends helped Allan to the vehicle because Allan had trouble walking without assistance due to his injuries. (*Id.* ¶ 43.)

In the interim, the Individual Defendants had arrived at Secrets in response to 911 calls reporting that a group of individuals had assaulted a Secrets patron and, "upon

information and belief," that those individuals then fired gunshots into the air outside of the establishment. (*Id.* ¶¶ 45-46.) Upon arrival, the Individual Defendants observed that Allan was a badly injured assault and robbery victim and that he had defecated on himself. (*Id.* ¶ 48.) The Individual Defendants also observed Matthews assisting his injured brother into their friends' vehicle. (*Id.* ¶ 49.) The Individual Defendants did not see a bulge that could have been a weapon in the waistband of Matthews' pants because his pants fit tightly and could not have concealed a weapon in the waistband. (*Id.* ¶ 51.) Moreover, the Individual Defendants did not hear plaintiffs say anything indicating that they were carrying a weapon. (*Id.* ¶ 52.)

### B. The Traffic Stop of Plaintiffs

With plaintiffs in the vehicle, plaintiffs' friends drove away from Secrets towards the Hospital, but the Individual Defendants stopped the vehicle en route to the Hospital. (*Id.* ¶¶ 53-56.) When one of the Individual Defendants approached the vehicle and demanded the driver's license and registration, the driver requested an explanation for the traffic stop. (*Id.* ¶¶ 57-58.) The officer refused to explain the purpose of the traffic stop, and again requested the driver's license and registration. (*Id.* ¶ 59.) The driver then complied with the officer's repeated request to provide her license and

registration.  (*Id.* ¶¶ 59-60.)  Thereafter, without explanation, the Individual Defendants ordered all of the vehicle occupants, including plaintiffs, to exit the vehicle.  (*Id.* ¶ 61.)  After the occupants had exited the vehicle, the Individual Defendants asked Matthews their destination, and Matthews explained that they were taking Allan to the Hospital for medical treatment after his assault.  (*Id.* ¶¶ 62-64.)

Although the Individual Defendants observed Allan's injuries and knew he required medical assistance, they further detained plaintiffs and searched the vehicle without the occupants' consent.  (*Id.* ¶¶ 65-66.)  The search revealed a gun inside the pocket of a jacket located in the vehicle.  (*Id.* ¶ 67.)  The Individual Defendants knew that the jacket and gun belonged to one of plaintiffs' friends, and not to plaintiffs. (*Id.* ¶ 68.)  Nevertheless, the Individual Defendants arrested all five of the vehicle occupants and transported them to the 77th Precinct.  (*Id.* ¶¶ 69-70.)  In effecting the arrests, the Individual Defendants "brutally handcuffed" plaintiffs, causing pain and numbness to plaintiffs' wrists.  (*Id.* ¶¶ 91, 97.) Plaintiffs asked the Individual Defendants to loosen the handcuffs, but they refused.  (*Id.* ¶ 92.)

**C.    The Coerced Confession**

At the 77th Precinct, the Individual Defendants denied Matthews' requests to release Allan so that he could go to the

Hospital and obtain medical attention. (*Id.* ¶¶ 75-76.)
Although Matthews informed the Individual Defendants that the
gun was not his and that he did not know who possessed it, the
Individual Defendants attempted to coerce Matthews into signing
a written confession by withholding medical treatment from his
brother Allan. (*Id.* ¶¶ 74-75.) The Individual Defendants told
all five arrestees that they would not be released and Allan
would not receive medical attention until one of them signed a
written confession admitting to possession of the gun. (*Id.*
¶ 71.) Because the individual who possessed the gun failed to
confess, Matthews capitulated to police coercion and signed a
written confession so that Allan could receive medical
assistance. (*Id.* ¶¶ 72-74, 77-78.)

At approximately 9:25 AM on December 20, 2007,[1]
approximately thirty minutes after Matthews signed a false
confession, Allan and the three other vehicle occupants were
released from custody. (*Id.* ¶¶ 79-80.) After his release,
Allan sought medical treatment at the Hospital and was diagnosed
with several ailments, including a detached retina from head
trauma. (*Id.* ¶ 81.)

---

[1] Although the complaint alleges that Allan was released on
December 20, 2010, it is clearly a typographical error meant to read
"December 20, 2007." (*See* Compl. ¶ 80.)

**D.  The Prosecution of Plaintiff Matthews**

Matthews was subsequently charged with Criminal Possession of a Weapon in the Second and Third Degrees.  (*Id.* ¶ 82.)  The Individual Defendants provided false information to the Assistant District Attorney, the Grand Jury, and during suppression hearings to justify the stop and search of the vehicle occupied by plaintiffs and to explain Matthews' arrest. (*Id.* ¶¶ 84-85.)  Each of the Individual Defendants had a different version of the events occurring after they arrived at Secrets on the night of the arrest.  (*Id.* ¶ 47.)  Based on the Individual Defendants' fabricated testimony, however, the Grand Jury indicted Matthews.  (*Id.* ¶ 86.)  Moreover, at a *Mapp*, *Dunnaway*, and *Huntley* hearing on May 18 and 20, 2010, defendants Granahan, Miller, and Marino testified falsely about the stop, seizure, and search of the vehicle occupied by plaintiffs.  (*Id.* ¶ 88.)  On July 27, 2010, the charges against Matthews were dismissed, due to the inconsistent false statements made by the Individual Defendants.  (*Id.* ¶ 89.)  Before the charges were dismissed, Matthews had appeared in court on approximately nine occasions.  (*Id.* ¶ 90.)

### E.  Other Relevant Allegations

From the time of the initial traffic stop on December 20, 2007 to the dismissal of Matthews' charges on July 27, 2010,[2] the Individual Defendants observed each other violate plaintiffs' rights under the United States Constitution and did nothing to prevent the constitutional violations.  (*Id.* ¶ 93.)

Individual defendant Sergeant Marino has a history of police misconduct involving substantiated allegations of dishonesty.  (*Id.* ¶ 99.)  Specifically, the City and NYPD suspended Marino for thirty days and placed him on modified duty for three years because he failed to report and was untruthful about an incident where a friend and fellow police officer shot an individual.  (*Id.* ¶ 101.)  Although the City and its policy makers were aware of Marino's prior misconduct, he nevertheless was promoted to sergeant and was given the supervisory responsibility to ensure that police officers adhere to police procedure, state law, and constitutional law.  (*Id.* ¶ 100.)

Finally, plaintiffs allege that the NYPD has a policy, practice, or custom (1) to search vehicles and apartments without probable cause, (2) to arrest all occupants of a vehicle or apartment regardless of whether the police have reason to believe weapons or contraband belong to a particular individual,

---

[2] Plaintiffs do not allege facts regarding what occurred in the interim period of approximately two years and seven months, beyond alleging facts regarding the suppression hearings in May 2010.

and (3) to create false versions of events to justify their actions.  (*Id.* ¶¶ 103-06.)

### F.   Plaintiffs' Claims

On October 29, 2010, plaintiffs filed the instant complaint asserting constitutional claims pursuant to Section 1983 against the Individual Defendants for unreasonable search and seizure, false arrest and imprisonment, malicious prosecution, excessive force, and failure to intervene, and a *Monell* claim against the City for the same constitutional violations.  Additionally, plaintiffs assert analogous claims under New York law against the Individual Defendants for false arrest and malicious prosecution, and against the City under the doctrine of *respondeat superior*.  (Compl. ¶¶ 112, 114, 117, 123, 130.)  Plaintiffs allege that, as a result of the Individual Defendants' conduct, plaintiffs sustained "physical pain and suffering, as well as psychological and emotional trauma," feared for their safety, and suffered humiliation.  (*Id.* ¶¶ 98, 128.)  Plaintiffs seek $2 million in compensatory damages and $1 million in punitive damages, as well as costs and reasonable attorney's fees.  (*Id.* at 22.)

### G.   The Instant Motion

Defendants' Rule 12(c) motion for judgment on the pleadings seeks the dismissal of plaintiffs' claims on the grounds that (1) plaintiffs fail to state a claim for each cause

of action, (2) defendants are entitled to qualified immunity, and (3) the state law claims should be dismissed because plaintiffs failed to file a Notice of Claim and Allan failed to file suit within the statute of limitations. (*See* ECF No. 35-5, Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings ("Defs. Mem.") at 1-2, 19.) Plaintiffs filed an opposition brief to defendants' motion (*see* ECF No. 33, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings ("Pls. Opp'n")), and defendants filed a reply brief (*see* ECF No. 36, Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss ("Defs. Reply")).[3]

## DISCUSSION

## II.  Standard for Judgment on the Pleadings

In deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as that applicable to a motion to dismiss, accepting the allegations in the complaint as true and drawing all inferences in favor of the non-moving party. *LaFaro*, 570 F.3d at 475-76. To survive a motion for

---

[3] The court notes that plaintiffs withdrew their claim for deliberate indifference to medical needs and so orders the dismissal of that claim. (*See* Compl. ¶¶ 132-36; Pls. Opp'n at 1 n.1.) The court also notes that plaintiffs mention assault and battery (*see* Compl. ¶ 98), but those allegations appear to constitute unintended typographical errors and are not alleged as separate causes of action. Notwithstanding, claims for assault and battery are plainly unsupported by the facts alleged here and, thus, they are dismissed if plaintiffs intended to assert claims for assault and battery.

judgment on the pleadings, the "complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice"; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 678-79.

## III. The Section 1983 Claims

The plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for the alleged deprivation of their rights under the Fourth and Fourteenth Amendments to the Constitution. In relevant part, Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted).  To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

The defendants do not appear to dispute that, at all relevant times, the Individual Defendants were acting under color of state law as NYPD employees.  (*See Compl.* ¶¶ 7, 10, 13, 16, 19, 22.)  Rather, defendants contend that plaintiffs fail to state a plausible cause of action for each of their constitutional and state law claims, or, in the alternative, that the Individual Defendants are entitled to qualified immunity.  (Defs. Mem. at 1-2.)  Each of plaintiffs'

constitutional claims under Section 1983 will be discussed in turn.[4]

### A.    Unreasonable Search and Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion, and a warrantless search of a car is valid if based on probable cause." *Ornelas v. United States*, 517 U.S. 690, 693 (1996) (citation omitted) (citing *Terry v. Ohio*, 392 U.S. 1 (1968) (investigatory stop); *California v. Acevedo*, 500 U.S. 565 (1991) (warrantless automobile search)). Plaintiffs allege that the Individual Defendants initially subjected them to an unreasonable search and seizure from the time of the traffic stop until the discovery of the firearm. (Compl. ¶¶ 107-08; Pls. Opp'n at 7-10.) Defendants argue that reasonable suspicion existed for the traffic stop, but do not appear to oppose plaintiffs' argument that the Individual Defendants lacked probable cause for the vehicle search. (Defs. Reply 1-3.)

---

[4] It appears that plaintiffs have incorrectly sued the Individual Defendants in their "individual and official capacities." (*See* Compl. ¶¶ 9, 12, 15, 18, 21.) It is well-settled that state officials acting in their official capacities are not persons within the meaning of Section 1983, and, as such, are not subject to liability under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, plaintiffs' claims against the Individual Defendants in their official capacities are dismissed.

### 1. Reasonable Suspicion for the *Terry* Stop

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Consistent with the Fourth Amendment, "the police can stop and briefly detain a person for investigative purposes." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30). Such a detention is known as a *Terry* stop and requires that "the officer [have] a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id.* (quoting *Terry*, 392 U.S. at 30); *United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006).

"The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas*, 517 U.S. at 696; *see also Florida v. J.L.*, 529 U.S. 266, 271 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their [seizure].").
While "[a]rticulating precisely what 'reasonable suspicion' and

'probable cause' mean is not possible," the Supreme Court has "described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity . . . ." *Ornelas*, 517 U.S. at 695-96 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Further, "the proper inquiry is not whether each fact considered in isolation denotes unlawful behavior, but whether all the facts taken together support a reasonable suspicion of wrongdoing." *United States v. Lee*, 916 F.2d 814, 820 (2d Cir. 1990); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating that courts must look at the "totality of the circumstances" when making reasonable-suspicion determinations). The court evaluates the totality of the facts from the perspective of a trained and experienced officer. *See Cortez*, 449 U.S. at 418.

When the Individual Defendants pulled over the vehicle, they seized plaintiffs within the meaning of the Fourth Amendment. *Whren*, 517 U.S. at 809-10. Indeed, the parties do not dispute that the traffic stop constituted a *Terry* stop requiring reasonable suspicion. Rather, defendants argue that reasonable suspicion supported the *Terry* stop (*see* Defs. Reply at 1-3), and plaintiffs, in opposition, argue that "defendants lacked articulable facts that created grounds for reasonable suspicion of unlawful activity." (Pls. Opp'n at 10.) The issue before the court, therefore, is whether plaintiffs state a

plausible claim that the Individual Defendants lacked reasonable suspicion to conduct the *Terry* stop.

The court finds that plaintiffs' claim for unreasonable seizure is supported by the allegations of the complaint and is plausible on its face. Specifically, the Individual Defendants observed that Allan required medical treatment after suffering an assault and witnessed Matthews helping him into their friends' waiting car. The Individual Defendants did not, however, see plaintiffs perform any activity, gesture, or threat that might indicate they possessed guns, or would or did engage in criminal activity. Although Individual Defendants could have "believe[d] that plaintiffs had in fact been involved in some sort of criminal activity related to the [violent] incident" at Secrets (Defs. Reply at 3), such speculation, by itself, is insufficient evidence of reasonable suspicion for purposes of a Rule 12(c) motion to dismiss.

Moreover, the Individual Defendants observed plaintiffs exit Secrets, enter the waiting car, and drive away, permitting plaintiffs to leave the scene. Given that Allan required assistance in walking to the car, the Individual Defendants likely had ample opportunity to approach and detain plaintiffs at Secrets if they had reasonable suspicion that plaintiffs were engaging in criminal activity. Although the limited shift in time and space would not negate reasonable

suspicion if it existed before plaintiffs left Secrets, *see Copeland v. Philadelphia Police Dept.*, 840 F.2d 1139, 1144 (3d Cir. 1988), it does support plaintiffs' claim that the Individual Defendants permitted them to leave Secrets unimpeded due to a lack of reasonable suspicion to detain them (*see* Compl. ¶ 53). Accordingly, accepting as true plaintiffs' allegations and drawing all inferences in plaintiffs' favor, the time lapse between the assault at Secrets and the traffic stop en route to the Hospital – during which there was no activity or conduct by plaintiffs or their friends that would give rise to reasonable suspicion - also weighs against a finding of reasonable suspicion for the *Terry* stop.

### 2. Probable Cause for the Vehicle Search

Given that the Individual Defendants lacked reasonable suspicion for the *Terry* stop, they also lacked probable cause for the automobile search. *See United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) ("[L]aw enforcement [may] conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband."). Based on plaintiffs' allegations, the Individual Defendants did not observe any suspicious conduct by plaintiffs or the other vehicle occupants or learn any new information between plaintiffs' departure from Secrets and the traffic stop. Consequently, the facts do not reflect any intervening

circumstances after the unlawful traffic stop that support a finding of probable cause to search the vehicle; thus the search was plausibly unreasonable.[5] Accordingly, plaintiffs allege facts that plausibly support a claim pursuant to Section 1983 for unreasonable search of the vehicle and seizure of the plaintiffs by defendants prior to the gun discovery.

### 3. Damages for Unreasonable Search and Seizure

Under Section 1983, "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy - including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999). Indeed, "[t]he fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions." *Id.* at 145. Thus, plaintiffs must allege damages attributable to the claims for unreasonable search and seizure to recover under Section 1983. *Compare Davenport v. County of Suffolk*, No. 99-CV-3088, 2007 WL 608125, at *2, *5-7 (E.D.N.Y. Feb. 23, 2007) (holding that damages from

---

[5] Although plaintiffs allege an unlawful search of the vehicle (Compl. ¶ 66), they do not appear to claim any damages, such as property damage, resulting directly from the unreasonable search. Consequently, the absence of probable cause for the search is only relevant insofar as it caused plaintiffs to be unconstitutionally detained for a longer period of time during the search, which may have increased plaintiffs' alleged damages.

alleged unreasonable stop and seizure prior to arrest were compensable where Section 1983 plaintiff alleged he suffered "humiliation, ridicule, disgrace, and embarrassment, and has sustained substantial expense, and significant physical, emotion, and mental anguish, including substantial attorney fee's [*sic*]"), *with Townes*, 176 F.3d at 145 (holding that the only actionable Fourth Amendment right for which the Section 1983 plaintiff could recover damages was for a suspicionless taxi cab stop and the associated search and seizure of his person, "which alone might at most support slight or nominal damages," and that plaintiff could not recover for his subsequent prosecution, conviction, and incarceration).

If plaintiffs ultimately prove their claim for unreasonable search and seizure, they are entitled only to damages resulting directly from the invasion of privacy and not from the discovery of the firearm and the ensuing arrests and prosecution of Matthews.[6]  Here, plaintiffs adequately allege damages attributable to the detention during the initial vehicle stop and search, including psychological and emotional trauma, restriction of liberty, fear for their safety, physical pain and suffering, and humiliation.  (Compl. ¶¶ 98, 128.)  Accordingly, plaintiffs have stated a plausible claim under Section 1983 for

---

[6]  Damages attributable to Matthews' prosecution is appropriately addressed in connection with his claim for malicious prosecution, discussed *infra* at Section III.C.  *See Townes*, 176 F.3d at 149.

damages stemming from an unreasonable stop, search, and seizure prior to the discovery of the gun and their arrests. *See Davenport*, 2007 WL 608125, at *7 ("[S]uch damages are clearly available to [plaintiff] if he can prove that a Fourth Amendment violation of his rights occurred during the initial stop and search of his person prior to arrest. Under Second Circuit law, [plaintiff] is entitled to a trial even if he is only able to recover slight or nominal damages." (citing *Townes*, 176 F.3d at 146)).

### 4. Qualified Immunity

In the alternative, defendants argue that the Individual Defendants are entitled to qualified immunity from plaintiffs' claims for unreasonable search and seizure because "reasonable officers could disagree as to whether there was reasonable suspicion to conduct such an investigatory stop." (Defs. Reply at 6.)

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (internal quotation marks omitted). As qualified immunity is an affirmative defense, the defendants bear the burden of proof. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

In order to deny qualified immunity to a government official, a court must find both that (1) the plaintiff has alleged facts that comprise a violation of a constitutional right, and (2) that the violated constitutional right was "clearly established" at the time of the official's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (holding that a federal court may use "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). Moreover, "'[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (quoting *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007)). "That is, officers are entitled to qualified immunity if 'officers of reasonable competence could disagree' as to legality of their action." *Felmine v. City of New York*, No. 09-CV-3768, 2011 WL 4543268, at *9 (E.D.N.Y. Sept. 29, 2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The objective reasonableness inquiry of whether the shield of qualified immunity applies to a defendant's conduct is a mixed

question of law and fact. *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004).

First, as stated above, plaintiffs allege a plausible claim for unreasonable search and seizure. Second, "the law was clearly established that [plaintiffs] had a constitutional right to be free from arrest without probable cause, as well as a constitutional right to be free from unreasonably prolonged or intrusive investigative detention." *Gilles v. Repicky*, 511 F.3d 239, 247 (2d Cir. 2007) (reversing district court's grant of qualified immunity because the officer did not demonstrate an objectively reasonable belief that he was not violating plaintiff's clearly established constitutional rights); *see also Kuriakose v. City of Mt. Vernon*, 41 F. Supp. 2d 460, 469 (S.D.N.Y. 1999) ("[T]he law on investigative stops was clearly established at the time of plaintiff's stop, and the officers should have known that such a stop required reasonable suspicion"); *Signorile v. City of New York*, 887 F. Supp. 403, 412 (E.D.N.Y. 1995) ("[C]learly established as constitutional rights are the prerogatives not to be arrested or searched, other than in a frisk grounded in reasonable suspicion, without probable cause."). At this stage, for purposes of deciding defendants' motion, the facts alleged do not support a finding that it was "objectively reasonable" for the Individual Defendants to believe there was reasonable suspicion for the

investigatory stop and probable cause for the vehicle search.

Indeed, on the facts alleged by plaintiffs, a reasonably

competent officer would not believe he had reasonable suspicion

to stop and search a vehicle transporting an injured assault

victim to a hospital to obtain medical care.  Accordingly, the

Individual Defendants are not entitled to qualified immunity

from plaintiffs' unreasonable search and seizure claim at this

time.

### B.    False Arrest and Imprisonment

A Section 1983 claim for false arrest sounding in the

Fourth Amendment is "substantially the same" as a claim for

false arrest under New York law.  *Jocks v. Tavernier*, 316 F.3d

128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845,

852 (2d Cir. 1996)).  Under New York law, the torts of false

arrest and false imprisonment are "synonymous," *Posr v. Doherty*,

944 F.2d 91, 96 (2d Cir. 1991), and the elements of a false

imprisonment claim are: "(1) the defendant intended to confine

[the plaintiff], (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the

confinement and (4) the confinement was not otherwise

privileged."  *Jocks*, 316 F.3d at 134-35 (internal quotation

marks omitted).  The existence of probable cause to arrest

constitutes a "complete defense" to an action for false arrest,

whether that action is brought under Section 1983 or state law. *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010).

### 1. The Applicability of the Fruit of the Poisonous Tree Doctrine

Although the Individual Defendants plausibly lacked reasonable suspicion for the stop and probable cause for the search that led to the discovery of the firearm (*see supra* Section III.A), it does not follow that the Individual Defendants lacked probable cause to arrest the plaintiffs. *See Townes*, 176 F.3d at 145-46. Plaintiffs' theory of liability amounts to a civil version of the "fruit of the poisonous tree" doctrine for excluding evidence in criminal proceedings. As noted above, however, the Second Circuit has held "that the fruit of the poisonous tree doctrine may not be invoked to support a § 1983 civil action, because the doctrine 'is an evidentiary rule that operates in the context of criminal procedure . . . and as such has generally been held to apply only in criminal trials.'" *Lawrence v. City Cadillac*, No. 10 Civ. 3324, 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010) (quoting *Townes*, 176 F.3d at 145); *see also Jenkins v. City of New York*, 478 F.3d 76, 91 n.16 (2d Cir. 2007) (noting that "the fruit of the poisonous tree doctrine cannot be invoked to support a section 1983 claim" for false arrest). Because the fruit of the poisonous tree doctrine is unavailable for Section

1983 claimants, the firearm seized by the Individual Defendants

pursuant to the allegedly unlawful traffic stop and search may

provide probable cause for plaintiffs' arrest for purposes of

their false arrest and imprisonment claims. *See, e.g.,*

*Lawrence*, 2010 WL 5174209, at *5 (finding that the "the legality

of the traffic stop does not impact plaintiff's claim for false

arrest").

### 2. The Statutory Automobile Presumption of Constructive Firearm Possession

Under New York Penal Law § 265.15(3), the existence of

a firearm in an automobile creates a permissive - not mandatory

- presumption that all occupants of the vehicle have common

constructive possession of the firearm, absent specific

exceptions (the "Automobile Presumption").[7] *County Ct. of Ulster*

*Cnty., N.Y. v. Allen*, 442 U.S. 140, 162-63 (1979) (holding the

statute constitutional as applied as a permissive presumption).

The Automobile Presumption does not apply if (1) the firearm is

found on an occupant's person; (2) the vehicle is lawfully

operated as a taxi, in which instance the duly licensed driver

---

[7] Section 265.15(3) states as follows:  "The presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found, except under the following circumstances: (a) if such weapon . . . is found upon the person of one of the occupants therein; (b) if such weapon . . . is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his or her trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol or revolver and one of the occupants, not present under duress, has in his or her possession a valid license to have and carry concealed the same."  N.Y. Penal Law § 265.15(3).

is not subject to the presumption; or (3) an occupant has in his possession a valid license to have and carry a firearm.  N.Y. Penal Law § 265.15(3).

It is well-settled under New York law that the Automobile Presumption may provide probable cause for the arrest of all occupants of a vehicle.  *See People v. Ayen*, 864 N.Y.S.2d 591, 593 (N.Y. App. Div. 4th Dept. 2008) (finding a "legitimate basis for the arrest pursuant to the [A]utomobile [P]resumption" where the defendant was in another person's vehicle and the police found a gun in the vehicle, despite defendant's contention that the gun belonged to the vehicle's owner); *People v. Williams*, 794 N.Y.S.2d 197, 198 (N.Y. App. Div. 4th Dept. 2005) (finding probable cause for vehicle occupant's arrest pursuant to the Automobile Presumption where police officers observed a handgun in plain view on a minivan seat); *People v. Gordon*, 725 N.Y.S.2d 423, 425 (N.Y. App. Div. 3d Dept. 2001) (affirming denial of motion to suppress because the Automobile Presumption "provided probable cause for defendant's arrest"); *People v. Miller*, 655 N.Y.S.2d 579, 579 (N.Y. App. Div. 2d Dept. 1997) (finding that, pursuant to the Automobile Presumption, police officers had probable cause to arrest the occupants of a vehicle upon discovering the butt of a gun sticking out from under the driver's seat).  Moreover, the Automobile Presumption "may apply regardless of the length of time an occupant is in a

vehicle or whether an occupant knows about the presence of the gun." *Gomez-Kadawid v. Kirkpatrick*, No. 08 Civ. 5819, 2011 WL 2581838, at *9 (S.D.N.Y. May 5, 2011) (Report and Recommendation) (citing *People v. Terry*, 538 N.Y.S.2d 626, 627 (N.Y. App. Div. 2d Dept. 1989)), *adopted by* 2011 WL 2581835 (S.D.N.Y. June 29, 2011).

Defendants argue that the Automobile Presumption provided probable cause for the Individual Defendants to arrest all vehicle occupants, including plaintiffs. (Defs. Mem. at 7-8.) Plaintiffs argue in response that the Individual Defendants did not have probable cause for the arrest because they allegedly knew of other circumstances, including that the jacket and the gun did not belong to plaintiffs (Compl. ¶ 68), that should have negated the Automobile Presumption (Pls. Opp'n at 12-18). In essence, plaintiffs argue that police officers must evaluate the totality of the circumstances before applying the Automobile Presumption. (*Id.* at 12-17, 20.)[8]

---

[8] Plaintiffs further argue that "[t]he Second Circuit has held that there is only probable cause to arrest an individual for possession of a firearm when the gun is found in an automobile when the police officers have reason to believe the person exercised possession or constructive possession over the firearm." (Pls. Opp'n at 12.) This in an incorrect statement of law. The only case that plaintiffs cite in support of this proposition is *United States v. Patterson*, 135 F. App'x 469, 474-75 (2d Cir. 2005) (summary order), which does not address the Automobile Presumption or even discuss probable cause to arrest a vehicle occupant where a firearm is found in the vehicle. Rather, *Patterson* only discusses constructive possession in determining whether there was sufficient evidence to sustain a jury's verdict convicting defendant of being a felon in possession of a firearm, where a firearm was found in the defendant's car. *Id.*

Here, the circumstances under which the firearm was discovered in the vehicle do not provide a basis to apply any of the statutory exceptions to the Automobile Presumption. Although the firearm was discovered within a personal effect, a jacket pocket, the jacket was located in the vehicle and was not being worn or claimed by any of the occupants, who had exited the vehicle before the discovery of the firearm. The permissive nature of the Automobile Presumption allows, but does not require, a jury to infer possession. *Allen*, 442 U.S. at 157; *People v. Lemmons*, 40 N.Y.2d 505, 511-12 (N.Y. 1976). Likewise, contrary to plaintiffs' position (*see* Pls. Opp'n at 18-20), police officers may consider exculpatory factors when contemplating arrest pursuant to the Automobile Presumption, but the statutory language does not require police officers to evaluate the totality of circumstances. Indeed, such a requirement goes against the legislative policy choice behind a statutory presumption seeking to ease the burden of establishing probable cause or constructive possession in complex circumstances reflecting common possession. *See Lemmons*, 40 N.Y.2d at 509-10 (describing the history underlying the Automobile Presumption as an effort to resolve difficulties in proving possession of weapons hidden in occupied automobiles). Therefore, requiring an antecedent totality of the circumstances test would, in essence, displace the statutory presumption and

circumvent its purpose. *See id.* at 511 ("[T]he placement of a
weapon in a handbag does not necessarily indicate that the owner
of a handbag is in sole and exclusive possession of the weapon.
. . . To hold that merely because the weapons were found in a
briefcase, handbag, shopping bag or carton the presumption is
nullified would defeat the legislative intent and render the
statute nugatory."); *see also Allen*, 442 U.S. at 165 n.27
("Legislative judgments such as this one [underlying the
Automobile Presumption] deserve respect in assessing the
constitutionality of evidentiary presumptions"). In light of
the foregoing and because plaintiffs allege that none of the
vehicle occupants admitted to possessing the firearm, the
Individual Defendants acted within their discretion by arresting
all vehicle occupants pursuant to the Automobile Presumption.

Moreover, the circumstances presented here would not
dictate that a reasonable officer must exculpate plaintiffs from
common constructive possession, given that none of the occupants
claimed sole possession of the gun. Even if, as plaintiffs
allege, the Individual Defendants knew the jacket and gun did
not belong to either of the plaintiffs (Compl. ¶ 68), this
information would not require the Individual Defendants to
exculpate plaintiffs from common possession. *See Gray v.
Babble*, No. 94 CV 5123, 1998 WL 178824, at *6 (E.D.N.Y. Feb. 12,
1998) ("'[T]he mere fact that the handbag that contained the

contraband belonged to the female co-defendant did not establish that the co-defendant was in sole and exclusive possession of the handbag at the time it was recovered by the police.'" (quoting *People v. Gray*, 607 N.Y.S.2d 736, 737 (N.Y. App. Div. 2d Dep't 1994))).  The jacket containing the gun was located in the cabin of the vehicle and appears to have been equally accessible to all vehicle occupants, including plaintiffs.  *See Lemmons*, 40 N.Y.2d at 511 (finding that guns found in a handbag on the floor of a vehicle constituted sufficient evidence of common possession pursuant to the Automobile Presumption to sustain defendants' convictions for possession of a dangerous weapon).  Indeed, accepting as true that neither the vehicle nor the jacket belonged to plaintiffs, a reasonable officer may believe that any of the occupants including plaintiffs possessed the gun, carried it into the vehicle, and hid it in someone else's jacket pocket before exiting the vehicle.

The court also finds no merit in plaintiffs' argument that the Individual Defendants could not have reasonably believed Allan had the capacity to exercise dominion over the firearm because he had been seriously injured, could barely stand or open his eyes, and could not talk.  (Pls. Opp'n at 15, 17.)  Even accepting as true that Allan may have temporarily lost the ability to handle or use the firearm effectively or at all due to his injuries, Allan's condition does not fall under

one of the three statutory exceptions to the Automobile Presumption and does not eliminate the possibility that he constructively possessed the firearm. The fact that Allan was entitled to medical treatment before interrogation does not dictate that he is entitled to exculpation due to his injuries.

In summary, once the firearm was discovered and remained unclaimed, the Individual Defendants had probable cause to arrest all vehicle occupants, including plaintiffs, and plaintiffs cannot defeat defendants' motion with conclusory allegations that, *inter alia*, the Individual Defendants "knew that the jacket and gun did not belong to plaintiffs." (*See* Compl. ¶¶ 68, 74; Pls. Opp'n at 15-18); *Iqbal*, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be assumed true."). Accordingly, the court dismisses plaintiffs' claims for false arrest and imprisonment because probable cause constitutes a complete defense. *Amore*, 624 F.3d at 536. Likewise, plaintiffs' New York law claim for false arrest also fails on the merits. *See Jocks*, 316 F.3d at 134.

### 3. Constitutionality of the Automobile Presumption As Applied to the Instant Case

In the alternative, plaintiffs challenge the constitutionality of the Automobile Presumption as applied to them, arguing that police officers cannot use the presumption to arrest all vehicle occupants without considering the totality of

the circumstances.  (Pls. Opp'n at 18-21.)  In support of their

argument, plaintiffs contend that the Supreme Court analyzed the

surrounding circumstances when deciding that the Automobile

Presumption was constitutional as applied in *Allen*.  (*Id*.)  In

*Allen*, however, the Supreme Court considered whether there was

sufficient evidence to sustain a defendant's conviction and held

that the Automobile Presumption was constitutional as a

permissive inference for a jury to accept or reject - in light

of the evidence – in finding a defendant guilty of gun

possession.  442 U.S. at 160-64 (denying habeas corpus relief

for petitioner appealing the conviction affirmed in *Lemmons*, 40

N.Y.2d 505).  Consequently, that decision considered the

distinct inquiry as to the propriety of a jury instruction

regarding the circumstances under which a jury could find a

defendant guilty of gun possession when applied to the evidence

presented, and, if anything, weakens plaintiffs' argument

because the circumstances of that case are factually comparable

to the case at bar after drawing all inferences in favor of the

plaintiffs.

      As in *Allen*, where the police discovered two guns

inside a handbag belonging to one occupant but accessible to the

three other occupants, 442 U.S. at 143-44, 163, the Individual

Defendants permissibly presumed constructive common possession

after discovering a gun in a jacket accessible to the other

occupants.  Therefore, plaintiffs' constitutional challenge has no merit because the Supreme Court has found the Automobile Presumption constitutional as applied to factually comparable circumstances.  *Id.*; *see also Bellavia v. Fogg*, 613 F.2d 369, 371-72, 374 n.7 (2d Cir. 1979) (holding that a "nearly identical" automobile presumption for drug possession was constitutional when applied to a case in which undercover officers recovered drugs from a vehicle occupied by defendant).

### 4.  Qualified Immunity

In the alternative, defendants argue that the Individual Defendants are entitled to qualified immunity from the false arrest claim because they were "objectively reasonable" in believing all vehicle occupants constructively possessed the firearm pursuant to the Automobile Presumption, given that no one admitted to ownership.  (Defs. Mem. at 17.) Qualified immunity from a false arrest claim can be established through "arguable probable cause," which exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).  Thus, "even if an officer is mistaken, and the arrestee did not commit the crime, the officer will not be held liable if he acted reasonably and in good

faith." *Washpon v. Parr*, 561 F. Supp. 2d 394, 403 (S.D.N.Y. 2008) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). Moreover, an officer may reasonably believe that his conduct is lawful unless "pre-existing law sufficiently foreshadows the direction it will take such that government officials have reasonable notice of the illegality of their actions." *Rodriguez v. Phillips*, 66 F.3d 470, 478-79 (2d Cir. 1995); *Khan v. Ryan*, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001).

In the instant case, the Individual Defendants had, at a minimum, "arguable probable cause" to arrest plaintiffs after discovering the firearm, given that a fair reading of N.Y. Penal Law § 265.15(3) and the relevant case law provided that police officers may arrest all vehicle occupants after discovering a firearm in the vehicle, absent the applicability of any of the statutory exceptions. Accordingly, even if the court did not already find that probable cause to arrest existed pursuant to the Automobile Presumption and that the presumption is constitutional as applied to the facts presented here, the Individual Defendants would be entitled to qualified immunity with regard to plaintiffs' false arrest claim.

## C. **Malicious Prosecution**

A malicious prosecution action implicates the Fourth Amendment constitutional right "to be free of unreasonable seizure of the person-- *i.e.*, the right to be free of

unreasonable or unwarranted restraints on personal liberty."
*Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.
1995). In order to prevail on a Section 1983 claim against a
state actor for malicious prosecution, "a plaintiff must show a
violation of his rights under the Fourth Amendment and must
establish the elements of a malicious prosecution claim under
state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–
61 (2d Cir. 2010) (citations omitted). To establish a malicious
prosecution claim under New York law, "a plaintiff must prove
(1) the initiation or continuation of a criminal proceeding
against plaintiff; (2) termination of the proceeding in
plaintiff's favor; (3) lack of probable cause for commencing the
proceeding; and (4) actual malice as a motivation for
defendant's actions." *Id.* at 161.

In the context of a malicious prosecution claim, the
element of malice consists of "a wrong or improper motive,
something other than a desire to see the ends of justice
served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d
Cir. 1996) (internal quotation marks omitted). The absence of
probable cause raises an inference of malice sufficient for a
claim of malicious prosecution to withstand summary judgment.
*Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d
Cir. 1997).

Probable cause, however, is a complete defense to a claim of malicious prosecution, and a grand jury indictment "creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Notwithstanding, "[t]he plaintiff may not satisfy his burden 'with mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith.'" *Felmine*, 2011 WL 4543268, at *12 (quoting *Savino*, 331 F.3d at 73). Moreover, "the alleged fabrication [by police] must be both material, *i.e.*, 'likely to influence a jury's decision,' and 'the legally cognizable' cause of the post-arraignment deprivation of liberty." *Richardson v. City of New York*, No. 02 CV 3651, 2006 WL 2792768, at *7 & n.4 (E.D.N.Y. Sept. 27, 2006) (citation omitted).

Liberally construing plaintiffs' complaint, the core allegations underlying Matthews' claim are that the Individual Defendants: (1) commenced a prosecution against Matthews using an intentionally coerced false confession; (2) provided false information to the Grand Jury to justify the traffic stop, search of the vehicle, and the belief that Matthews possessed the gun; and (3) testified falsely at pretrial hearings to

prevent suppression of the gun. (Compl. ¶¶ 73, 78, 82, 84-88.)

In response, defendants argue that the malicious prosecution

claim should be dismissed because plaintiffs failed to plead

sufficient facts to satisfy two elements of the claim: improper

motive (malice) and absence of probable cause to prosecute

Matthews. (Defs. Mem. at 9-12.) Even if plaintiffs' complaint

alleged more than mere conclusory assertions of false testimony

prompted by the Individual Defendants' malicious intent, that

claim must fail because the Individual Defendants are entitled

to absolute immunity for any claims arising from their allegedly

false testimony.

### 1. Absolute Immunity under Section 1983 for Grand Jury and Pretrial Hearing Testimony

The Supreme Court has held that trial witnesses,

including police officers, have absolute immunity with respect

to any Section 1983 claims arising from that testimony, even if

it is alleged that such testimony was perjured. *Briscoe v.*

*Lahue*, 460 U.S. 325, 335-36, 341-46 (1983) (affirming dismissal

of Section 1983 claims arising from police officers' perjured

testimony during a criminal trial). More recently, the Supreme

Court clarified that the absolute immunity from Section 1983

claims for trial witnesses, including police officers, applies

"with equal force" to grand jury witnesses, even if falsified

information or perjury is alleged. *Rehberg v. Paulk*, 132 S.Ct.

37

1497, 1505-07 (2012); *see Jovanovic v. City of New York*, No. 10-4398-cv, 2012 WL 2331171, at *2 (2d Cir. June 20, 2012) (summary order) (noting that *Rehberg* extends *Briscoe's* absolute immunity from Section 1983 claims to grand jury testimony).  The rationale behind this rule of absolute immunity is that potential civil liability is not needed to deter false testimony before the grand jury or at trial because other sanctions – such as a prosecution for perjury, which is a serious criminal offense – provide a sufficient deterrent.  *Rehberg*, 132 S.Ct. at 1505.  Furthermore, the Second Circuit has extended absolute immunity from Section 1983 malicious prosecution claims to "police officers who testify at adversarial pretrial proceedings."  *Daloia v. Rose*, 849 F.2d 74, 75-76 (2d Cir. 1988) (holding that NYPD officers have absolute immunity from liability in an action under Section 1983 based on the officers' allegedly perjured testimony at a pretrial suppression hearing).

Notwithstanding plaintiffs' allegations of falsified testimony, the Individual Defendants are entitled to absolute immunity from liability for their testimony before the Grand Jury and at the suppression hearings.  *See Rehberg*, 132 S.Ct. at 1505-06 (grand jury testimony); *Daloia*, 849 F.2d at 75-76 (adversarial pretrial hearing testimony).  Consequently, Matthews' Section 1983 claims for malicious prosecution based on allegedly false grand jury and pretrial hearing testimony fail

as a matter of law.  *See Jones v. Dalton*, No. 09-138, 2012 WL
1134895, at *8 (D.N.J. Apr. 3, 2012) (dismissing malicious
prosecution claim on summary judgment and holding that
"[a]bsolute immunity prohibits [plaintiff] from rebutting th[e]
presumption [of probable cause that attaches to his indictment]
with evidence that [defendant] made misrepresentations to the
grand jury." (citing *Rehberg*, 132 S.Ct. at 1506); *Hayes v. Cnty.
of Sullivan*, Nos. 07-CV-7667, 09-CV-2071, 2012 WL 1129373, at
*12 (S.D.N.Y. Mar. 30, 2012) (granting summary judgment on
Section 1983 claim in favor of defendant police officers that
allegedly committed perjury at plaintiff's suppression hearing
because defendants "are absolutely immune from any liability
based on the testimony they provided" at the suppression hearing
(citing *Daloia*, 849 F.2d at 75)).  Accordingly, Matthews'
malicious prosecution claim is dismissed in part, insofar as it
is based on the Individual Defendants' grand jury testimony and
pretrial hearing testimony.

### 2.    Malicious Prosecution Claim for Commencing Prosecution with a Coerced Confession

Plaintiffs allege that the Individual Defendants
intentionally coerced a false confession from Matthews by
withholding medical treatment from his brother Allan, and then
initiated and maintained a prosecution against Matthews by
knowingly providing the false confession to prosecutors.

(Compl. ¶¶ 71-79, 82; Pls. Opp'n at 22-24.) Defendants assert a complete defense of probable cause to prosecute based on Matthews' arrest and subsequent grand jury indictment, and further argue that plaintiffs cannot satisfy the element of malice. (Defs. Mem. at 9-12.)

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, . . . the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti*, 124 F.3d at 130 (reversing grant of summary judgment on Section 1983 malicious prosecution claim where "a jury could find that [defendant] played a role in initiating the prosecution by preparing the alleged false confession and forwarding it to prosecutors"). Moreover, a police officer may not reasonably rely on a known coerced confession as lawful grounds for probable cause. *See id.* ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee."); *Niemann v. Whalen*, 911 F. Supp. 656, 668-69 (S.D.N.Y. 1996) (finding that "the issue of whether [defendants] coerced plaintiff's confession is material to resolving the issue of probable cause" for plaintiff's arrest), *aff'd*, 107 F.3d 3 (2d Cir. 1997); *see also Wilkins v. DeReyes*, 528 F.3d 790, 800 (10th Cir. 2008)

(affirming denial of qualified immunity on malicious prosecution claim because, if statements to police officers were indeed involuntary, "the officers who carried out the alleged coercion could not reasonably rest their determination of probable cause upon those statements").

Accepting as true the allegations in plaintiffs' complaint, the Individual Defendants intentionally coerced Matthews' confession by taking advantage of Allan's seriously injured condition and the familial relationship between Allan and Matthews. Moreover, the Individual Defendants then knowingly used the false confession to initiate and maintain the prosecution of Matthews, clearly violating his constitutional rights. Because the Individual Defendants could not reasonably rely on a known coerced confession to initiate and maintain a prosecution, *Niemann*, 911 F. Supp. at 668-69, they lacked probable cause to prosecute. If proven at trial, these allegations, which are quite serious, would certainly be sufficient to sustain a Section 1983 claim based on the alleged coerced confession.

Defendants' contention that Matthew's arrest and grand jury indictment create a presumption of probable cause is unavailing because, for purposes of the instant motion, plaintiffs' complaint adequately pleads allegations of bad faith police coercion and use of the resulting false confession to

initiate a prosecution.  In addition, the alleged coerced confession was almost certain to persuade the grand jury to indict Matthews, satisfying the materiality requirement.  *See Richardson*, 2006 WL 2792768, at \*5-7 (denying summary judgment where "jury could reasonably infer that [one officer] knowingly misidentified him and that [a second officer] fabricated the evidence that [plaintiff] was in possession of the pre-recorded buy money," and "that as a result [plaintiff] was indicted and prosecuted").  Given that plaintiffs plausibly allege the absence of probable cause in initiating and continuing the prosecution of Matthews, malice may be inferred.  *See Ricciuti*, 124 F.3d at 131.  Accordingly, Matthews states a plausible malicious prosecution claim that the Individual Defendants unconstitutionally commenced a prosecution against him using a known coerced confession.

### 3.  Qualified Immunity

In the alternative, defendants claim qualified immunity from the malicious prosecution claim.  (Defs. Mem. at 16.)  It is clearly established, however, "that a coerced confession could not constitutionally be used against a defendant in a criminal case."  *Higazy*, 505 F.3d at 173.  "Qualified immunity is unavailable where . . . the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe

otherwise." *Ricciuti*, 124 F.3d at 130 (denying qualified immunity where defendants forwarded a known false confession to prosecutors). Accordingly, based on the facts alleged, defendants are not entitled to qualified immunity because no reasonable officer could believe that coercing a confession from an accused by withholding medical treatment from an injured family member and using the coerced confession to prosecute the accused is constitutional.

### D. Excessive Force

Plaintiffs allege that, in violation of plaintiffs' Fourth Amendment rights, the Individual Defendants: (1) "brutally handcuffed plaintiffs, causing them pain and numbness to their wrists" and (2) refused to loosen the handcuffs upon plaintiffs' request. (Compl. ¶¶ 91-92, 110.) Defendants argue that these allegations are insufficient to sustain a claim that unreasonable force was used or that plaintiffs suffered any real injuries beyond pain. (Defs. Mem. at 13.)

#### 1. The Standard for Excessive Force

An excessive force claim under Section 1983 is governed by the "objective reasonableness" standard of the Fourth Amendment. *Graham*, 490 U.S. at 399. The reasonableness inquiry evaluates the degree of force necessary to effectuate an arrest in light of the specific factual circumstances, including "whether the suspect poses a threat, resists, or attempts to

43

evade arrest, and the severity of the crime at issue." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing *Graham*, 490 U.S. at 396). "Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Id.* To assess the reasonableness of the handcuffing, a court must also consider whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Id.* at 215.

### 2. The Injury Requirement

There is a consensus among courts in the Second Circuit that "tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch v. City of Mt. Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008); *see Drummond v. Castro*, 522 F. Supp. 2d 667, 679 (S.D.N.Y. 2007) (granting summary judgment in favor of defendants where plaintiff alleged no injury, but only that "he was handcuffed tightly"). "Placing handcuffs on an arrestee tight enough to cause nerve damage may, however, constitute excessive force in violation of the Fourth Amendment." *Esmont*, 371 F. Supp. 2d at 214-15; *Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990) ("Since [plaintiff] alleges a punched stomach, swollen and bleeding wrists from the tight handcuffs,

as well as a faintly detectable scar on her left wrist, her complaint is sufficient to allege a § 1983 claim."). Moreover, "the Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." *Richardson v. Providence*, No. 09-CV-4647, 2011 WL 3701887, at *7 n.3 (E.D.N.Y. Aug. 22, 2011) (citing *Maxwell v. City of New York*, 380 F.3d 106, 109-10 (2d Cir. 2004) (reversing grant of summary judgment on excessive force claim where plaintiff was shoved into a police car and suffered pain, bumps, scrapes, bruises, and post-concussive syndrome); *Robinson v. Via*, 821 F.2d 913, 923-24 (2d Cir. 1987) (affirming denial of summary judgment on excessive force claim where plaintiff suffered bruising that lasted a couple weeks and for which she did not seek medical treatment)).

The determination of whether tight handcuffing that causes pain and numbness satisfies the injury requirement may be presented in a motion for summary judgment. *Compare Lucky v. City of New York*, No. 03 Civ. 1983, 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004) (denying summary judgment and stating that "[w]hile [plaintiff's] injuries appear *de minimis*, his statements that he was shoved in the police car in a manner that injured his shoulder and that the handcuffs were placed so as to leave red marks on his wrists [for one week] raise material issues of fact"), *with Faruki v. City of New York*, No. 10 Civ.

45

9614, 2012 WL 1085533, at *2, *7 (S.D.N.Y. Mar. 30, 2012)
(granting summary judgment in favor of defendants where medical
evidence did not corroborate plaintiff's allegation that she
suffered a hairline fracture and nerve injuries in her right
wrist and hand), and *Hamlett v. Town of Greenburgh*, No. 05 Civ.
3215, 2007 WL 119291, at *3 (S.D.N.Y. Jan. 17, 2003) (granting
summary judgment in favor of defendants where plaintiff only
alleged "that she suffered brief numbness as a result of the
handcuffs being too tight and that both officers held her arms
behind her back"). *But see Abdul-Rahman v. City of New York*,
No. 10 Civ. 2778, 2012 WL 1077762, at *7 (E.D.N.Y. Mar. 30,
2012) (granting defendants' motion for judgment on the pleadings
where plaintiff alleged excessively tight handcuffs causing
numbness and marks to his wrists).

     In opposing a defense motion for summary judgment,
"[u]nsubstantiated claims of nerve damage, in the absence of
corroborating medical evidence, are insufficient" to sustain a
claim of excessive force from handcuffing.  *Esmont*, 371 F. Supp.
2d at 215; *see Lynch*, 567 F. Supp. 2d at 468 (granting summary
judgment in favor of defendants where tight handcuffs failed to
cause persistent injury and plaintiff never sought medical
treatment).  *But see Lucky*, 2004 WL 2088557, at *7 (denying
summary judgment even though plaintiff did not suffer permanent

injury or seek medical treatment for a painful shoulder and red
marks on his wrists).

### 3. The Sufficiency of Plaintiffs' Allegations of Excessive Force

Here, plaintiffs allege that "brutally" tight handcuffs
caused pain and numbness to their wrists, and that they
requested the Individual Defendants to loosen their handcuffs to
no avail. (Compl. ¶¶ 91-92.) Moreover, plaintiffs allegedly
were compliant with police orders and not violent or resisting
arrest (*id.* ¶¶ 94-95), which suggests that their arrests likely
did not necessitate an unusual degree of force. *See Gonzalez v.
City of New York*, No. 98-CV-3084, 2000 WL 516682, at *4
(E.D.N.Y. Mar. 7, 2000) (finding that the "abusive application
of handcuffs" was not reasonable where "plaintiff was not
charged with a serious crime, did not pose a threat to the
safety of the officers, and was not resisting arrest"). On
these facts, plaintiffs state a plausible claim for excessive
force because they allege that (1) the handcuffs were "brutally"
tight, (2) they requested that the handcuffs be loosened to no
avail, (3) they did not resist arrest, and (4) numbness can
constitute a sufficiently severe injury.

Brief numbness is not enough, *Hamlett*, 2007 WL 119291,
at *3, however, and plaintiffs have not alleged the duration of
their injuries or whether it required medical attention, facts

about which they have knowledge and defendants may develop during discovery.  Plaintiffs should be aware that in order to withstand summary judgment, they must provide medical evidence that the handcuffs caused serious, long-lasting, or persistent injury.  *See Esmont*, 371 F. Supp. 2d at 215.  At this stage of the case, however, plaintiffs have alleged facts sufficient to sustain their excessive force claim.

### 4.  Qualified Immunity

In the alternative, defendants argue that the Individual Defendants are entitled to qualified immunity because "reasonable officers could disagree on what constitutes tight handcuffing" (Defs. Mem. at 17), but the court finds that they are not entitled to qualified immunity at this time.  As noted *supra*, "the qualified immunity inquiry turns on whether the defendants' actions were objectively reasonable under clearly established law; and the clearly established law of excessive force itself hinges on the reasonableness of the force used." *Felmine*, 2011 WL 4543268, at *20 (citing *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003)).  Here, additional facts are required to determine whether reasonable officers could have believed the degree of force used was reasonable and warranted. Moreover, given that plaintiffs allegedly did not resist arrest, the use of excessively tight handcuffs by the Individual Defendants could have been unwarranted.  *See Gonzalez*, 2000 WL

516682, at *5 (denying qualified immunity on an excessive force claim because "no reasonable officer could believe that the abusive application of handcuffs was constitutional, given the fact that [plaintiff] did not resist arrest").  Accordingly, whether the Individual Defendants are entitled to qualified immunity on the excessive force claim cannot be determined based on the facts alleged.

### E.  Failure to Intervene

Defendants argue that plaintiffs' failure to intervene claim fails as a matter of law because plaintiffs allege that all of the Individual Defendants directly violated their constitutional rights *and* failed to intervene while other officers violated their rights.  (Defs. Mem. at 14.)  Defendants thus argue that the claim must be dismissed because a police officer can only be personally involved in one manner or the other.  (*Id.*)

Plaintiffs' failure to intervene claim is grounded in the widely recognized rule that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  Moreover, the failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim.  *See*

*Coleman v. City of New York*, No. 07 Civ. 1051, 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010) (dismissing failure to intervene claims against police officers where no underlying constitutional violation was alleged). Because plaintiffs properly allege at least one constitutional violation, plaintiffs are entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene. *See Biggs v. City of New York*, No. 08 Civ. 8123, 2010 WL 4628360, at *6 n.12 (S.D.N.Y. Nov. 16, 2010) (noting that police officers can be personally involved in violating constitutional rights through either means – direct participation or failure to intervene). Qualified immunity from this cause of action is unavailable at this time because additional facts, which discovery should reveal, are required concerning what the officers who failed to intervene observed regarding the other officers' alleged violations of plaintiffs' constitutional rights.

### F. Municipal Liability (*Monell* Claim)

Plaintiffs allege that the City is liable for constitutional violations under Section 1983. To impose liability under Section 1983 on a municipality for the acts of its employees, a plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right." *Torraco v. Port Auth.*, 615 F.3d 129, 140 (2d Cir. 2010) (internal quotation marks omitted); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Following *Monell* and its progeny, a municipality cannot be held liable under § 1983 under a theory of *respondeat superior*. Rather, there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Abreu v. City of New York*, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (citations omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[A] plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees." *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127-30 (2d Cir. 2004)).

In the context of a motion for judgment on the pleadings, "[t]o allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order) (citing *Vives v. City of N.Y.*,

524 F.3d 346, 350 (2d Cir. 2008)).  Mere "boilerplate"
assertions that a municipality has such a custom or policy that
resulted in a deprivation of the plaintiffs' rights is
insufficient to state a *Monell* claim.  *See Bradley v. City of
New York*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June
18, 2009).

First, plaintiffs claim that the City, through the
NYPD, has a policy of searching vehicles and apartments without
probable cause.  (Compl. ¶ 139; Pls. Opp'n at 27.)  Such
"boilerplate" assertions, however, are plainly insufficient to
sustain a *Monell* claim.  *See Duncan v. City of New York*, No. 11-
CV-3826, 2012 WL 1672929, at *2-3 (E.D.N.Y. May 14, 2012)
(dismissing *Monell* claim alleging that the City has a "custom
and policy of making illegal and false arrests with excessive
force [and] without probable cause"); *Bradley*, 2009 WL 1703237,
at *3 (dismissing *Monell* claim alleging that the City "fail[ed]
to adequately train, discipline, and supervise" employees and
"fail[e]d to promulgate and put into effect appropriate rules
and regulations applicable to the duties and behavior" of its
employees as "insufficient to raise an inference of the
existence of a custom or policy, let alone that such a policy
caused Plaintiff to be arrested without probable cause").
Plaintiffs do not allege any facts supporting a custom or
practice, and their allegation of "only a single constitutional

deprivation . . . is insufficient to establish a policy or practice." *Tangredi v. N.Y. City Dept. of Envtl. Prot.*, No. 09 CV 7477, 2012 WL 834580, at *6 (S.D.N.Y. Feb. 16, 2012) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)) (dismissing *Monell* claim under Section 1983 where plaintiff alleged that the absence of a policy for conducting searches of women's locker rooms reflects a policy of neglect).  This "[t]hreadbare recital[] of the elements of [the] cause of action" does not suffice.  *See Iqbal*, 556 U.S. at 678.  Accordingly, plaintiffs' *Monell* claim regarding police searches without probable cause is dismissed.

Second, plaintiffs claim that the City has a policy of permitting its police officers to apply the Automobile Presumption in an unconstitutional manner by "arrest[ing] all occupants of the vehicle or apartment regardless of whether the police have reason to believe weapons or contraband belong to a particular individual."  (Compl. ¶ 139.)  This claim fails as a matter of law because plaintiffs' false arrest claim, which underlies this *Monell* claim, is dismissed.  *See Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) (summary order) (dismissing *Monell* claims that are derivative of plaintiff's claims against individual defendants because the latter claims were dismissed); *Sullivan v. City of New York*, No. 10 Civ. 0038, 2011 WL 3806006, at *6 (S.D.N.Y. Aug. 29, 2011) ("[P]laintiff

has failed to plead a viable constitutional claim. Accordingly, there is no predicate for a *Monell* claim and therefore it is dismissed.") Moreover, the Supreme Court reviewed the New York State legislature's policy decision to streamline possession jurisprudence and found the Automobile Presumption constitutional as an evidentiary device applied to facts similar to the case at bar. *Allen*, 442 U.S. at 163-65 & n.27. Accordingly, plaintiffs' *Monell* claim that the City's deliberate indifference to the NYPD's application of the Automobile Presumption is dismissed because the policy is constitutional and plaintiffs' constitutional rights were not violated in that regard.

Third, plaintiffs allege that the City is deliberately indifferent to its police officers' practice of creating false versions of events to justify their actions. (Compl. ¶¶ 103-04.) Specifically, plaintiffs allege that the City was deliberately indifferent when it retained and promoted Sgt. Marino despite knowing that, at least three years prior, Sgt. Marino "did not report and was untruthful about an incident where a friend of his, who also happened to be a police officer, shot an individual."[9] (*Id.* ¶¶ 100-01.) To the extent that

_____

[9] Although the time at which Sgt. Marino's prior misconduct occurred is not specified, the incident appears to have occurred more than three years before December 20, 2007 because plaintiffs allege that Sgt. Marino was suspended and placed on modified duty for three years prior to his promotion. (Compl. ¶ 101.)

plaintiffs seek to impose municipal liability for a single employment decision by the City, namely the decision to retain and promote Sgt. Marino, they "must demonstrate that [the] municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 398, 411 (1997).

In *Brown*, the Supreme Court recognized that "[e]very injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense," and that "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410. Therefore, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . Only where . . . a reasonable policymaker [would] conclude that the *plainly obvious* consequence of the [employment] decision . . . would be the deprivation of a third party's federally protected right can the official's [act or omission] constitute 'deliberate indifference.'" *Id.* at 410-11 (emphasis added); *see also Jones v. Town of East Haven*, Nos. 10-4731-cv, 10-4894-cv, 2012 WL 3104523, at *7 (2d Cir. Aug. 1, 2012) ("We have held that

demonstration of deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent.").

Here, plaintiffs argue that the City's retention and promotion of Sgt. Marino after his prior misconduct caused a violation of their constitutional rights "because defendant Marino continued his prior practice of lying to cover up wrongful acts and permitting and encouraging his subordinates to do the same." (Pls. Opp'n at 29.) The constitutional violation underlying this *Monell* claim appears most closely linked to Matthews' malicious prosecution claim. Whether plaintiffs rely on the alleged perjured testimony[10] or on the alleged coercion of Matthews and the use of his false confession to prosecute him as the constitutional bases for their *Monell* claim, the claim fails to satisfy the "stringent standard" of deliberate indifference.

---

[10] In *Rehberg*, the Supreme Court clarified that "this rule [of absolute immunity from any Section 1983 claim based on a grand jury witness' testimony] may not be circumvented . . . *by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution*." *Rehberg*, 132 S.Ct. at 1506 (emphasis added). Here, plaintiffs' *Monell* claim alleging a policy of police dishonesty is based on the malicious prosecution claim, which was dismissed in part as barred by absolute immunity of the Individual Defendants for their alleged false testimony. *See supra* Section III.C.1; *Rehberg*, 132 S.Ct. at 1506 (grand jury testimony); *Briscoe*, 460 U.S. at 335-36, 341-46 (trial testimony); *Daloia*, 849 F.2d at 75-76 (adversarial pretrial hearing testimony). Consequently, the rationale behind absolute immunity from Section 1983 claims for trial and grand jury witnesses suggests that plaintiffs' *Monell* claim may be barred by absolute immunity insofar as plaintiffs rely on grand jury or pretrial hearing testimony as evidence for the *Monell* claim. Notwithstanding, the court need not apply absolute immunity in this case because the *Monell* claim fails on the merits, as discussed *infra*.

Neither perjured testimony nor the use of a coerced false confession is the "plainly obvious consequence" of retaining and promoting a police officer who allegedly previously participated in a cover-up for a friend and fellow officer's misconduct.  *See Brown*, 520 U.S. at 412-14 (finding that the use of excessive force by a police officer was not a "plainly obvious consequence" of a failure to adequately screen his background before hiring him).  That is, the prior incident, involving Sgt. Marino allegedly failing to report, and lying about, a police shooting involving his friend, is not predictive of a tendency to engage in conduct that violates a person's right to be free from an unreasonable seizure occasioned by malicious prosecution, namely using an intentionally coerced false confession and testifying falsely in front of the Grand Jury and at pretrial hearings to commence and sustain a prosecution.  The alleged deprivations in this case cannot reasonably be found to be a known plainly obvious consequence of retaining and promoting Sgt. Marino after the alleged incident.

Plaintiffs are essentially asking the court to impose *Monell* liability where the City retains and promotes a police officer after a single instance of misconduct – for which the officer was reprimanded and suspended - and then that officer commits a constitutional violation more than three years after the previous misconduct.  The *Monell* doctrine cannot, however,

be applied as broadly as plaintiffs assert given the factual circumstances. Accordingly, because the link between the City's decision to retain and promote Sgt. Marino and the alleged violations of plaintiffs' constitutional rights is too tenuous to sustain a *Monell* claim against the City, this *Monell* claim is therefore dismissed as well.

## IV. State Law Claims

Plaintiffs also bring claims under New York law against the Individual Defendants for false arrest and malicious prosecution (Compl. ¶¶ 112, 117), and against the City under the doctrine of *respondeat superior* for false arrest, malicious prosecution, and failure to intervene (*id.* ¶¶ 114, 123, 130). As discussed *supra* in Section III.B.2, plaintiffs' federal and state law false arrest claims fail on the merits and are dismissed.

Defendants further argue that all of plaintiffs' state law claims should be dismissed for failure to comply with the Notice of Claim requirements as mandated by New York General Municipal Law §§ 50-e and 50-i, and that Allan's state law claims are also barred by the corresponding statute of limitations. (Defs. Mem. at 19-20.) Notably, plaintiffs do not oppose dismissal of their state law claims on these grounds. Indeed, plaintiffs argue only that they "alleged sufficient facts to state plausible claims for relief under *federal* law"

58

and decline to defend the state law claims in their opposition brief. (*See* Pls. Opp'n at 1 (emphasis added).) The court will address the statute of limitations argument first.

## A.   Statute of Limitations

Section 50-e of New York General Municipal Law "requires a plaintiff asserting state tort law claims against a municipal entity or its employees to file a Notice of Claim within ninety days after such claim arises and to commence the action within a year and ninety days from the date of which the cause of action accrues." *Faruki*, 2012 WL 1085533, at *9; *see Caceres v. Port Auth. of New York and New Jersey*, 631 F.3d 620, 624-25 (2d Cir. 2011) (dismissing vicarious liability claims arising under state law because plaintiff failed to satisfy commencement of suit requirements analogous to N.Y. Gen. Mun. L. § 50-e). The statute of limitations for all of Allan's claims began to run on December 20, 2007, the day of the stop and search and his release from police custody.[11] *See Wallace v. Kato*, 549 U.S. 384, 391 (2007) ("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages." (internal quotation marks omitted)). Consequently, Allan's state law claims against the

---

[11] As noted *supra* n.1, Allan's release occurred on December 20, 2007, despite a typographical error in the complaint. (*See* Compl. ¶ 80.)

City and its employees became time-barred on March 20, 2009, long before the complaint was filed on October 29, 2010. Accordingly, Allan's state law claims are dismissed as time-barred. Because Allan's state law claims are time-barred, it would be futile for him to amend the complaint to plead compliance with the Notice of Claim requirements. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations.").

**B.    Notice of Claim**

New York state courts strictly construe Notice of Claim requirements, *AT&T v. N.Y. City Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990), which federal courts must apply in exercising supplemental jurisdiction over state law claims, *Excell v. City of New York*, No. 12 Civ. 2874, 2012 WL 2675013, at *4 (E.D.N.Y. July 5, 2012) (citing *Promisel v. First Am. Artificial Flowers*, 943 F.2d 251, 257 (2d Cir. 1991) ("In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim.")). In order to satisfy the Notice of Claim requirements, a plaintiff asserting state tort law claims against a municipal entity or its employees must plead in the complaint that: (1) the Notice of Claim was timely served within ninety days after such claim

arose; (2) at least thirty days have elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) the defendant failed to satisfy the claim in that time. *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006); *see* N.Y. Gen. Mun. L. §§ 50-e(1), 50-i(1).

"The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Horvath*, 423 F. Supp. 2d. at 423 (citing *Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943, 948 (N.Y. App. Div. 2d Dept. 1989)). Because timely service of a Notice of Claim is "a condition precedent to commencement of a tort action against New York City or its employees, . . . failure to do so is grounds for dismissal."[12] *Excell*, 2012 WL 2675013, at *4 (dismissing state law torts claims against police officers, including false arrest and malicious prosecution, for failure to file a timely Notice of Claim); *see also Griffin v. City of New York*, No. 10 CV 2592, 2012 WL 3090295, at *19 (E.D.N.Y. July 31, 2012) (dismissing state tort law claim against police officers for failure to file a timely Notice of Claim).

---

[12] The Notice of Claim requirements "[do] not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness -- misconduct for which the City has no obligation to indemnify." *Brenner v. Heavener*, 492 F. Supp. 2d 399, 405 (S.D.N.Y. 2007). Here, because plaintiffs sue the City directly and do not assert intentional tort claims against the Individual Defendants, who were acting within the scope of their employment throughout the relevant period, the Notice of Claim requirements apply.

Here, plaintiffs may not assert state tort law claims against the City and its employees because they fail to plead compliance with the Notice of Claim requirements and do not oppose defendants' request for dismissal on this ground. *See Petway v. City of New York*, No. 10-TV-01048, 2012 WL 2254246, at *8 (E.D.N.Y. June 14, 2012) (dismissing state law tort claims where plaintiff failed to "plead that he filed a notice of claim, . . . respond to defendants' argument, or offer any evidence suggesting that he did file a notice of claim"). The court therefore grants the motion to dismiss plaintiffs' state law claims on this ground; however, with respect to plaintiff Matthews, whose state law claims for malicious prosecution and failure to intervene have not been dismissed on other grounds, the dismissal of those claims is without prejudice, and with leave for Matthews to amend the complaint to plead timely compliance with the Notice of Claim requirements, if Matthews did indeed timely comply with those requirements and can substantiate that claim with credible evidence.[13]  Because

---

[13] Defendants submitted a declaration stating that a search of the City's records revealed that neither plaintiff filed a Notice of Claim for the claims herein.  (ECF No. 35-3, Declaration of Gregory Mouton ¶ 3; Defs. Mem. at 19.)  Consequently, it appears unlikely that plaintiffs can amend their complaint in good faith to plead compliance with the Notice of Claim requirements.  If plaintiffs cannot provide evidence to establish compliance with the Notice of Claim requirements, amendment will be futile.  *See Horvath*, 423 F. Supp. 2d. at 424 ("Even if plaintiff were permitted to amend the Complaint . . . , he could apparently produce no evidence other than his own word that he had done so.  That testimony would be contradicted by the testimony of a number of County officials, supported by the documentary

Matthews' state law claims for malicious prosecution and failure
to intervene are dismissed for failure to plead compliance with
the Notice of Claim requirements, the court need not otherwise
address the merits of these claims at this stage.

## CONCLUSION

For the reasons set forth herein, defendants' motion
for judgment on the pleadings pursuant to Rule 12(c) is:

1) Denied with respect to plaintiffs' Section 1983 claims
   for unreasonable search and seizure;

2) Granted with respect to plaintiffs' Section 1983
   claims for false arrest and imprisonment;

3) Denied in part and granted in part with respect to
   Matthews' Section 1983 claim for malicious
   prosecution;

4) Denied with respect to plaintiffs' Section 1983 claims
   for excessive force;

5) Denied with respect to plaintiffs' Section 1983 claims
   for failure to intervene;

6) Granted with respect to plaintiffs' *Monell* claims for
   municipal liability; and

7) Granted with respect to plaintiffs' state law claims,
   with leave granted for Matthews to file an amended
   complaint alleging compliance with the Notice of Claim
   requirements for his remaining state law claims of
   malicious prosecution and failure to intervene.

In summary, the only remaining claims in this action are (1)
plaintiffs' Section 1983 claims for unreasonable search and
seizure, (2) Matthews' Section 1983 claim for malicious

---

record. . . . Therefore, it is futile to allow plaintiff to amend his
complaint and his motion to amend is denied.").

prosecution in connection with the use of his allegedly coerced false confession to initiate and maintain his prosecution, (3) plaintiffs' Section 1983 claims for excessive force, and (4) plaintiffs' Section 1983 claims for failure to intervene, all against the Individual Defendants.  By September 19, 2012, Matthews shall have the opportunity to file an amended complaint that adequately pleads compliance with the Notice of Claim requirements for his remaining state law claims of malicious prosecution and failure to intervene, and defendants shall respond within the time prescribed by the Federal Rules of Civil Procedure.  Finally, by September 26, 2012, the parties shall file a joint status report via ECF advising the court how they wish to proceed with this case, and whether a settlement conference before Magistrate Judge Mann would be beneficial.

**SO ORDERED.**

Dated: Brooklyn, New York
September 5, 2012

                              _____
                                      /s/
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York